ELIZA B. HAWLEY ET AL., APPELLANTS, V. GEORGE VON LANKEN ET AL., APPELLEES.

FILED JANUARY 18, 1906.   No. 14,071.

1. **Equity:** LACHES. Courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute of limitations.

2. **Laches.** In applying the doctrine of laches the true inquiry should be whether the adverse party has been prejudiced by the delay in

bringing the action and whether a reasonable excuse is offered for the delay.

3. ———: DEMURRER. Where the laches of the plaintiff and the staleness of his claim are apparent from the petition, objection may be taken by demurrer.

4. Courts will take judicial notice of the changed conditions during the past thirty-eight years as affecting the values of real estate, and of the probability that during that time many witnesses who were of mature years and discerning judgment in the year 1865 have either died or permitted the ordinary events of that period to pass from their memory.

APPEAL from the district court for Washington county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Herman Aye, R. S. Hall, G. W. Covell* and *Wright & Stout,* for appellants.

*John C. Cowin, W. C. Walton, D. Z. Mummert, I. C. Eller, Clark O'Hanlon* and *E. B. Carrigan, contra.*

JACKSON, C.

The plaintiffs seek in this action to set aside a deed of conveyance executed by their ancestor, John Irwin. It is charged in the petition that Irwin purchased the real estate involved September 7, 1857; that he made a pretended deed of the same December 2, 1865, to Samuel Irwin; that John Irwin died intestate October 20, 1893, leaving no widow, and that he was continuously insane and without mental capacity to make a deed from the year 1856 until his death. They assert title by inheritance. It is alleged that the defendants are in possession and claim title through the deed to Samuel Irwin, and mesne conveyances, and that the defendants have no other title or interest in the premises except certain tax liens, which the plaintiffs offer to liquidate by redemption. A general demurrer to the petition, interposed on behalf of the defendants, was sustained and the plaintiffs prosecute an appeal.

The principal contention as to the correctness of the

judgment arises over the application of the doctrine of laches to the facts stated in the petition. It is urged by the plaintiffs that, under the well established and recog-nized rule, the question of laches cannot be raised by general demurrer. We find, however, no such established rule. The courts have quite consistently held that, if the laches of the plaintiff and the staleness of his claim are apparent from the petition, objection may be taken by demurrer. *Williams v. First Presbyterian Society,* 1 Ohio St. 478; *Solomon v. Solomon,* 81 Ala, 505; *Furlong v. Riley,* 103 Ill. 628; *Abraham v. Ordway,* 158 U. S. 416, 15 Sup. Ct. Rep. 894.

It is next contended that the action is one for the recovery of the title or possession of lands, and that the plaintiffs, within the statute of limitations, have ten full years from the death of their ancestor within which to institute their action, and under the rule of *Michigan Trust Co. v. City of Red Cloud,* 3 Neb. (Unof.) 722, laches will not be imputed to the plaintiffs who seek equitable relief, unless the delay is sufficient to bar the corresponding legal remedy. We are not reconciled, however, to the belief that the court in that case intended to lay down any such hard and fast rule. The first paragraph of the syllabus is:

"Laches cannot usually be charged against a party for failing to bring an action to enforce an equitable claim if he acts within the time allowed by the statute of limitations for commencing a corresponding action at law."

The rule so stated is correct and not open to criticism; it does not, however, militate against the right of a court of equity to apply the doctrine, often stated and always adhered to, that if by the delay and laches of the complainant it has become doubtful whether the other parties can be in a condition to produce the evidence necessary to a fair presentation of the cause on their part, or it appears that they have been deprived of any just advantage which they might have had if the claim had been put forward before it became stale and antiquated, or if they be sub-

jected to any hardship which might have been avoided by more prompt proceedings, although the full time may not have elapsed which would be required to bar any remedy at law, the court will deal with the remedy in equity as if barred. In the second paragraph of the syllabus in *Abraham v. Ordway, supra* (15 Sup. Ct. Rep. 894), the rule is thus stated:

"Independently of any statute of limitation, courts of equity have inherent power to refuse relief after undue and unexplained delay, and where injustice would be done by granting the relief asked, and the doctrine applies to suits relating to land."

In the body of the opinion Mr. Justice Harlan, speaking for the court, said:

"The relief sought cannot be given consistently with the principles of justice, or without encouraging such delay in the assertion of rights as ought not to be tolerated by courts of equity. Whether equity will interfere in cases of this character must depend upon the special circumstances of each case. Sometimes the courts act in obedience to statutes of limitations; sometimes in analogy to them. But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law."

And also, where, from delay, any conclusion the courts may arrive at must at best be conjectural, and the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult, if not impossible, to do justice, the plaintiff will, by his laches, be precluded from relief. 12 Am. & Eng. Ency. Law (1st ed.), p. 550, and authorities there cited.

And it is not even necessary that the court should be satisfied that the original claim was unjust.  12 Am. & Eng. Ency. Law (1st ed.), p. 551.  In *North v. Platte County*, 29 Neb. 447, an action to restrain the payment of interest on bonds issued in aid of a railway corporation, Mr. Justice MAXWELL used this language:

"The action was brought nine years after the bonds were issued and delivered and the plaintiff shows by his petition that he has been a taxpayer of Platte county during 'many years past.'  There are many cases holding that such delay and laches will defeat an action where relief would have been granted had the application been seasonably made."

The rule so stated is not in conflict with *Michigan Trust Co. v. City of Red Cloud, supra.*

Where it is sought to apply the doctrine of laches independent of the statute of limitations, the true inquiry should be whether the adverse party has been prejudiced by the delay in bringing the action, and whether a reasonable excuse is offered for the delay, because if the delay has resulted in no injustice to the adversary, or if it can be excused upon reasonable grounds, then equity will not refuse relief.  Within the rule thus stated, have the plaintiffs, by their petition, shown themselves entitled to the remedy?  One of the plaintiffs is a daughter and the others are the grandchildren of the ancestor through whom they assert title by descent.  The ancestor conveyed the real estate by deed, which they now seek to avoid, 28 years prior to his death.  The action for the relief sought was instituted on the 8th day of September, 1903; almost 38 years after the execution of the deed, and within 42 days of 10 years after his death.  The sole ground urged why they ought to be permitted to recover is the insanity of the grantor, which they say was continuous from the date of the deed to the time of his death.  It does not appear that the plaintiffs, or either of them, have at any time been under any disability during the time within which the powers of the court might have been invoked to es-

tablish their right, nor is any other reason given why they have not sooner instituted proceedings to assert such rights.

On the other hand we cannot remain unconscious of the situation of the defendants. For 38 years they and their grantors have been permitted to rest in the belief that their title was secure; nor can we close our eyes to the fact of the changed conditions during that time, within which the value of real estate has increased many fold, and during which doubtless, many witnesses who were of mature years and discerning judgment in 1865 have either died or permitted the events of that period, in which they had no personal interest, to pass from their memory. It does not appear from the petition that the plaintiffs were without notice of the condition of their ancestor at the time he executed the deed, or of the fact of the conveyance itself; and while they had no interest in the real estate at that time such as would justify a resort to the courts on their own behalf, yet self-interest should have prompted them to make use of the means afforded by law to prevent a dissipation of the estate of their parent through his insane whims or desires. They should at least have taken steps to have preserved to him during his lifetime what of right was his, and to the extent that they failed to do so should now be held accountable through lapse of time; nor should they be permitted, even after his death, to appeal to their technical rights under the statute of limitations, unless their action was seasonable and so taken as to prevent the least injustice to their adversaries. The absolute injustice of permitting the plaintiffs, at this late hour, to reap the reward of the industry of the defendants upon a mere offer to reimburse them for the taxes paid out on the property involved, is too apparent to require further notice.

It is evident that the trial court made no mistake in dismissing the plaintiffs' bill, and we recommend that the judgment be affirmed.

DUFFIE and ALBERT, CC., concur.

